# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF KANSAS

EDWARD J. HUND,

    *Plaintiff,*

vs.

Case No. 18-01064-EFM-JPO

NATIONAL UNION FIRE INSURANCE
COMPANY OF PITTSBURGH, PA,

    *Defendant.*

# MEMORANDUM AND ORDER

This suit arises out of an insurance coverage dispute between Plaintiff Edward Hund and Defendant National Union Fire Insurance Company of Pittsburgh, PA ("NUFI"). Hund was involved in an emergency plane landing that resulted in the total loss of his airplane and caused additional property damage. Hund sought to recoup his losses from his insurer, NUFI, but the company denied coverage. Hund brought this suit to compel payment, and both parties have filed motions for summary judgment. For the following reasons, Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment (Doc. 23) is granted and Edward J. Hund's Motion for Summary Judgment (Doc. 25) is denied.

## I. Factual and Procedural Background[1]

On September 22, 2016, Hund and fellow pilot Roger Kidd departed from Augusta Municipal Airport in a two-person airplane owned by Hund. Kidd, who was acting as pilot in command of the flight, piloted the airplane to an airport in El Dorado, Kansas, where both Hund and Kidd performed a "touch-and-go" maneuver. Hund and Kidd then flew to Col. James Jabara Airport ("Jabara") in Wichita, Kansas. Each pilot performed another "touch-and-go" at Jabara, and afterwards they begin flying back to the Augusta airport to conclude their trip.

While en route to Augusta, the airplane's engine experienced a loss of power. Kidd—who was piloting the plane at the time—told Hund "your airplane," at which point Hund assumed the role of pilot in command and attempted to restart the engine. When Hund's efforts failed, he tried to redirect the plane back to Jabara. After determining the plane would be unable to reach Jabara, Hund attempted to land in a nearby field. During the emergency landing, the airplane collided with a fence, damaging Hund's plane beyond repair and causing approximately $1,200 in property damage to the fence. Hund and Kidd escaped uninjured.

Hund's insurance policy with NUFI excluded coverage if the plane was piloted by anyone not covered under the policy's "Pilots Endorsement." The Pilot's Endorsement imposed the following conditions:

> A) While the aircraft is in flight it will be piloted only by the person(s) specifically named as pilot(s) for your aircraft listed below, provided that the pilot-in-command has:

---
[1] The parties have stipulated to the following material facts. The parties have also attached a copy of the parties' insurance policy. No other evidence has been submitted for the Court's consideration.

1. a current and valid FAA Pilots Certificate with ratings and endorsement applicable to your aircraft, or is under the direct supervision of a Certified Flight Instructor;

2. *if required, a current and valid FAA Medical Certificate*;

3. *if required, a current and valid Biennial Flight Review*;

4. logged or is receiving the dual flight instruction required below and received a written endorsement from a Certified Flight Instructor to solo the same make and model as your aircraft;

5. logged the solo flight(s) in the same make and model as your aircraft prior to carrying passengers. (emphasis omitted).

. . .

B) . . . the aircraft may also be piloted by any person who has your permission and has:

1. a current and valid FAA Private, Commercial, or ATP pilot certificate with rating and endorsements applicable to your aircraft.

. . .

2. *if required, a current and valid FAA Medical Certificate*;

3. *if required, a current and valid Biennial Flight Review;*

. . . (The Court's emphasis).

Hund was a specifically named pilot under Subsection A of the Pilots Endorsement and was required to meet the requirements therein; Kidd was not specifically named, and therefore he needed to meet the requirements in Subsection B. At the time of the flight, Hund possessed a current Flight Review but he did not possess a current FAA medical certificate. Kidd did not have a current Biennial Flight Review—his most recent Flight Review was October 2010.

Hund submitted an insurance claim to NUFI seeking $70,000 for the loss of the airplane and $1,200 for the damage to the fence. NUFI denied coverage. On January 25, 2018, Hund filed

a petition in the District Court of Sedgwick County, Kansas, seeking a judgment for $71,200, as well as interest, costs, and attorney's fees. On February 28, 2018, NUFI removed the state proceeding to this Court. The parties stipulated to the above material facts and filed their respective motions for summary judgment.

## II. Legal Standard

Summary judgment is appropriate if the moving party demonstrates that there is no genuine issue as to any material fact, and the movant is entitled to judgment as a matter of law.[2] A fact is "material" when it is essential to the claim, and issues of fact are "genuine" if the proffered evidence permits a reasonable jury to decide the issue in either party's favor.[3] The movant bears the initial burden of proof and must show the lack of evidence on an essential element of the claim.[4] If the movant carries its initial burden, the nonmovant may not simply rest on its pleading but must instead "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.[5] These facts must be clearly identified through affidavits, deposition transcripts, or incorporated exhibits—conclusory allegations alone cannot survive a motion for summary judgment.[6] The Court views all evidence and reasonable inferences in the light most favorable to the party opposing summary judgment.[7]

---

[2] Fed. R. Civ. P. 56(a).

[3] *Haynes v. Level 3 Commc'ns, LLC*, 456 F.3d 1215, 1219 (10th Cir. 2006).

[4] *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23, 325 (1986)).

[5] *Id.* (citing Fed. R. Civ. P. 56(e)).

[6] *Mitchell v. City of Moore*, 218 F.3d 1190, 1197 (10th Cir. 2000) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)).

[7] *LifeWise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004).

### III. Analysis

Hund's insurance policy conditioned coverage on compliance with the policy's Pilots Endorsement. The Pilots Endorsement expressly required, unsurprisingly, that the pilot have a valid Federal Aviation Administration ("FAA") Pilots Certificate. In addition, the Pilots Endorsement stated that "if required" the pilot must also have a current and valid FAA Medical Certificate and a current and valid Biennial Flight Review. It is undisputed that neither Hund nor Kidd possessed both these qualifications. Whether these two qualifications are "required" turns on whether the FAA imposes such a requirement in the Federal Aviation Regulations ("FARs"), which are codified in Title 14 of the Code of Federal Regulations.[8] NUFI argues that the FAA required the pilot in command of this flight to have a Biennial Flight Review[9] and at least a Third-

---

[8] In Hund's Response to NUFI's Motion for Summary Judgment he suggests that it is NUFI's position that the "if required" language is governed by the FARs. But Hund, in both his Complaint and his Motion for Summary Judgment, takes that very position, and at no point provides an alternative definition for "if required." For example, Hund alleged in his Complaint: "The plain language of the Policy's Pilots Endorsement states that a FAA Medical Certificate and/or Biennial Flight Review are only necessary if required by the FAA." Hund's Complaint also stated: "The plain language of the policy states that the current and valid biennial flight review are only necessary elements of the policy if required by the FARs." Finally, Hund states in his Motion for Summary Judgment that "it is reasonable to presume that Chapter 14 of the Code of Federal Regulations, or the Federal Air Regulations (FARs) governs the 'if required' language of the Policy."

The Court agrees with NUFI's position and Hund's earlier assessment that the policy's "if required" language is plain and unambiguous. The Policy's coverage was contingent on Hund—or another pilot in command—possessing a valid and current Flight Review and Medical Certificate "if required." If federal law mandates that the pilot in command have these qualification, then these qualifications are "required." The policy's plain language directs the Court to consider what the law requires, and here that means consideration of the FAA's regulations. Despite Hund's effort to distance himself from this position in his Response, he provides no argument for why the Court should conclude otherwise.

[9] 14 C.F.R. § 61.56(c)(1)–(2) ("[N]o person may act as pilot in command of an aircraft unless, since the beginning of the 24th calendar month before the month in which that pilot acts as pilot in command, that person has (1) Accomplished a flight review given in an aircraft for which that pilot is rated by an authorized instructor and (2) A logbook endorsed from an authorized instructor who gave the review certifying that the person has satisfactorily completed the review.").

Class Medical Certificate.[10] Hund does not dispute this point. Instead, Hund argues that under 14 C.F.R. § 91.3(b), the FAA suspends these requirements during an in-flight emergency.

Hund's reliance on § 91.3(b) is misplaced. Section 91.3(b) provides that "[i]n an in-flight emergency requiring immediate action, the pilot in command may deviate *from any rule of this part* to the extent required to meet that emergency."[11] Hund argues that when he took over as pilot in command from Kidd, § 91.3(b)'s emergency rules were in effect, and the emergency rules "suspended all other rules" except to do what is necessary to respond to the emergency. This is an untenable reading of the regulation, ignoring the structure of the Code of Federal Regulations and the plain language of § 91.3(b).

The Code of Federal Regulations is organized into 50 Titles by topic; Title 14, for example, codifies federal regulations on Aeronautics and Space. Within each Title are Chapters, Subchapters, Parts, Subparts, and Sections. The in-flight emergency exception that Hund relies on is codified in Title 14, Chapter 1, Subchapter F, Part 91, Subpart A, Section 91.3(b) of the Code of Federal Regulations. Section 91.3(b)'s in-flight emergency exception allows a pilot to "deviate from any rule *of this part* to the extent required to meet that emergency." The plain language of this regulation states that the in-flight emergency exception authorizes a pilot to depart from any rule in Part 91, where the FAA has codified its rules on flight operations. The regulations governing *pilot qualifications* that are at issue here, however, are not found in Part 91. Those regulations are addressed in Part 61.[12] Hund's argument that § 91.3(b) suspends all FAA rules

---

[10] 14 C.F.R. § 61.23(a)(3)(i) ("[A] person [m]ust hold at least a third-class medical certificate [w]hen exercising the privileges of a private pilot certificate, recreational pilot certificate, or student pilot certificate . . . .").

[11] 14 C.F.R. § 91.3(b) (emphasis added).

[12] *See* 14 C.F.R. § § 61.56(c)(1)–(2), 61.23(a)(3)(i).

during an in-flight emergency, other than what is necessary to respond to the emergency, is unsupported by the regulation's plain language.

Although there is a dearth of caselaw interpreting § 91.3(b), Hund requests that the Court consider the Court of Appeals of Georgia's ruling in *Brown v. North American Specialty Insurance Company*.[13] In that case, Brown was killed and the airplane he was piloting was destroyed when he ran out of fuel and crashed while attempting to land his plane in low visibility weather conditions. Brown was a certified pilot by the FAA, but he was rated for visual flight rules ("VFR") when piloting a multi-engine airplane, meaning he was prohibited from piloting a multi-engine airplane in weather conditions that would require the use of instrument flight rules ("IFR").

Brown was attempting a three-and-a-half-hour flight in a multi-engine airplane from Pennsylvania to the Covington Airport near Atlanta, Georgia. Brown experienced both VFR and IFR weather conditions on his flight Covington, and as he was approaching the Atlanta area he contacted the Atlanta Air Route Traffic Control Center for an update on the weather conditions. The Traffic Control Center informed Brown that no weather information was available for the Covington Airport, but that IFR conditions still prevailed at the nearby Atlanta airports. The Traffic Control Center also informed Brown that other airplanes had made successful approaches at the nearby Fulton County Airport. Brown told the Traffic Control Center that he would make one attempt to land at the Covington Airport—if unsuccessful, he would alter course to the Fulton County Airport. Brown attempted to land at Covington Airport, but was thwarted by poor weather conditions. He then flew to the Fulton County Airport, where he missed two attempts to land,

---

[13] 508 S.E.2d 741 (Ga. App. 1998).

reporting that he was unable to see the runway. While attempting a third approach at the Fulton County Airport, Brown's airplane ran out of fuel and his flight reached its tragic end.

Brown's insurer refused to pay for the loss of the airplane because Brown was not licensed and qualified to pilot a multi-engine airplane in IFR weather conditions. The insurer relied on a provision in the insurance contract requiring Brown "to be licensed and qualified under Federal, State and local laws and regulations for all segments of the flight involved."[14] Brown's estate sued the insurer in Georgia state court, and the district court granted the insurer summary judgment.

The Georgia Court of Appeals reversed the district court's order, finding that issues of material fact precluded summary judgment. The *Brown* Court concluded that a jury could find, based on the information available to Brown when he departed, that he reasonably expected to encounter VFR weather conditions during his flight, and that when he unexpectedly encountered IFR weather conditions he had no reasonable alternative but to operate and attempt to land the airplane in IFR conditions. Based on § 91.3(b)'s in-flight emergency exception, the court reasoned "that Brown could have reasonably expected that the aircraft would remain insured while he operated it in IFR weather conditions while attempting to land, if he did so only to the extent required to meet an in-flight emergency . . . ."[15] The *Brown* Court concluded that it must strike a balance between "the reasonable expectations of the VFR pilot that insurance coverage be maintained when unexpected IFR weather conditions are confronted, and the common-sense conclusion that neither the insurer nor the VFR pilot should expect coverage to apply where the

---

[14] *Id.* at 742–43.

[15] *Id.* at 746.

aviation mandates are disobeyed by acts known by all VFR pilots and aviation insurers to increase the risk of loss."[16]

The *Brown* Court noted that the FAA's regulations governing the operation of an aircraft in VFR and IFR weather conditions are located in both Part 61 and Part 91. Although the rules relating to IFR operations in Part 91 clearly fall under § 91.3(b)'s exception, the *Brown* Court did not specifically address why it applied this exception to Part 61's requirement that a person may not pilot an airplane in IFR weather conditions unless they possess the appropriate instrument rating.[17]

Here, the Court need not opine on whether the *Brown* Court correctly applied § 91.3(b) to the facts of its case. The *Brown* Court was understandably concerned that a VFR pilot could lose insurance coverage—due to no fault of his own—upon encountering unforeseeable IFR weather conditions. But unlike weather conditions, which can change quickly and at times unpredictably, Hund and Kidd's pilot qualifications are not subject to fluctuation mid-flight. It is uncontroverted that Hund and Kidd did not possess the requisite qualifications for this flight. At all times during the flight, Hund was noncompliant with the terms of his insurance policy. The in-flight emergency allowed Hund to lawfully deviate from any rule in Part 91 to the extent necessary to respond to the emergency, but the in-flight emergency did not excuse Hund's noncompliance with any other FAA rule or regulation, including those in Part 61. The Court therefore holds, based on the uncontroverted material facts, that NUFI permissibly denied coverage to Hund and is entitled to

---

[16] *Id.* (citation and quotations omitted).

[17] *See* 14 C.F.R. § 61.3(e)(1).

judgment as a matter of law. Conversely, Hund is not entitled to judgment as a matter of law, and his Motion is denied.

**IT IS THEREFORE ORDERED** that Defendant National Union Fire Insurance Company of Pittsburgh, PA's Motion for Summary Judgment (Doc. 23) is **GRANTED.**

**IT IS FURTHER ORDERED** that Edward J. Hund's Motion for Summary Judgment (Doc. 25) is **DENIED**.

**IT IS SO ORDERED**.

This case is closed.

Dated this 26th day of March, 2019.

ERIC F. MELGREN
UNITED STATES DISTRICT JUDGE